## GOEPFERT v. COMPAGNIE GENERALE TRANSATLANTIQUE.

(Circuit Court, E. D. Pennsylvania. October 11, 1907.)

No. 82.

1. CORPORATIONS—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE.

Defendant was a corporation of France, having its principal place of business in Paris, and operating a line of passenger steamers between Havre and New York. It maintained a general agency in New York, with a resident agent, who represented it in the United States and Canada. It had numerous ticket agents throughout the United States, who sold its tickets, among others a company in Philadelphia. Such company maintained offices in the principal cities of the United States and Europe, and arranged tours and sold tickets over the principal railway and steamship lines of the world. It sold tickets over defendant's line, among others, at its Philadelphia office, receiving a commission therefor, and also $600 per year on account of its office rent. It painted defendant's name on its office door, as also the names of other steamship and railway lines. Except for the sale of such tickets, no business was done on behalf of defendant in the Eastern district of Pennsylvania. *Held*, that it was not doing business in the district in such sense that a federal court there obtained jurisdiction over it by service on the local agent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2520–2527.

Service of process on foreign corporations, see notes to Eldred v. American Palace Car Co., 45 C. C. A. 3; Cella Commission Co. v. Bohlinger, 78 C. C. A. 473.]

2. COURTS—JURISDICTION OF FEDERAL COURTS—RECORD IN CAUSE REMOVED.

Every fact that is essential to bring a cause within the limited jurisdiction of a Circuit Court of the United States must appear affirmatively upon the record; and if, therefore, a record that has been removed into such court from a state court would be fatally defective if the suit had been originally brought in the federal tribunal, it is none the less defective because it was originally brought in a state court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 817.]

On Rule to Set Aside Service of Summons.

Sandberg & Heymann, for plaintiff.

B. Franklin Pepper, W. B. Bodine, Jr., and George Wharton Pepper, for defendant.

J. B. McPHERSON, District Judge.    This suit was originally brought in the court of common pleas of Philadelphia county, and in due season was removed to the Circuit Court.    The writ of summons was served by the sheriff of the county, and it is his service that I am now asked to set aside.    The return is as follows:

"Served the Compagnie Generale Transatlantique, a foreign corporation, by serving Raymond, Whitcomb & Company, Inc., agents of the said Compagnie Generale Transatlantique, a foreign corporation, by handing 7—27—1906 a true and attested copy of the within writ to Charles S. Knowlton, personally, the vice president of Raymond, Whitcomb & Co., Inc., agents."

The ground of the defendant's attack upon the service of the writ is thus set forth in the petition for the rule:

"Your petitioner is a corporation duly organized and existing under the laws of the republic of France, and having its principal place of business in the city of Paris, in the said republic of France, and your petitioner owns and operates a line of steamships plying between the ports of Havre, in the said republic of France, and the city of New York, in the United States of America, and your petitioner has established and maintains a general agency, with a resident general agent and an assistant general agent, at the city of New York, in the state of New York, for the transaction of your petitioner's business in the United States and Canada.    During all of the time above mentioned [that is, since the bringing of the suit] your petitioner has done and does now no business of any sort, and has had and has now no office or agent whatsoever, in Pennsylvania; excepting that Raymond, Whitcomb & Co., Inc., mentioned in the said sheriff's return, are authorized and permitted by your petitioner to sell its tickets on commission, and upon the exclusive responsibility of said Raymond, Whitcomb & Co., Inc."

The plaintiff filed an answer to the petition, asserting that business was done in this jurisdiction by Raymond, Whitcomb & Co. as agents, and thereupon certain testimony was taken, from which the following undisputed facts appear:    The defendant is a corporation under the laws of France, having its principal place of business in the city of Paris.    It owns and operates a line of steamships plying between Havre and the city of New York.    It has a general agent in New York to transact all its business in the United States and Canada.    Raymond, Whitcomb & Co. are tourists and ticket agents, having offices in the principal cities of the United States and Europe.    They arrange tours, and sell tickets, over the principal railway and steamship lines of the world, including the tickets of the defendant, which they sell in the city of Philadelphia.    For such sale they are paid a commission, and also $600 on account of their office rent.    They are not authorized to make any other contract on behalf of the defendant.    One of the defendant's printed circulars, which gives information in regard to tickets, names Raymond, Whitcomb & Co. among eight principal agencies in the United States and Canada; this prominence being due to the fact that, with few exceptions, they sell more tickets than other agents.    When an application for passage is received at the Philadelphia office of Ray-

mond, Whitcomb & Co., it is their custom to telegraph to New York for the desired cabin accommodations. They have the defendant's tickets for sale in their Philadelphia office, as well as the tickets of many other steamship and railway companies. They print the defendant's name on their door, with the names of other railway and steamship lines. When they sell one of the defendant's tickets, the purchase money is put into their general account, from which they remit periodically to the defendant, as they do in the case of other railway and steamship companies, whose tickets they also sell. The defendant has other ticket agencies in Philadelphia, and has about 3,000 throughout the United States and Canada. Except the sale of tickets in Pennsylvania, as above set forth, no business is done on behalf of the defendant within the jurisdiction of this court.

If these facts are compared with the facts in Green v. Chicago, etc., Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, as they are condensed in the opinion of Mr. Justice Moody, it will be apparent, I think, that the decision in Green's Case controls the question now before the court. The scope of that decision may perhaps be better understood if the facts upon which it is founded are stated in a little more detail. The following extract from the brief of counsel for the plaintiff in error accurately describes the situation as it was presented to the Circuit Court (whose opinion is reported in 147 Fed., at page 767), and before the Supreme Court:

"The Chicago, Burlington & Quincy Railway Co., the defendant in the case, is an Iowa corporation, operating a line of railroad from Chicago, Ill., and St. Louis, Mo., to Denver, Colo., with various branches. It does not operate any railroad in the state of Pennsylvania. In order to secure business in competition with other lines, the company maintains in the city of Philadelphia an office at No. 836 Chestnut street. It pays the rent of this office, and prominently displays its name upon it; and, with its knowledge, its name, with its location at this office, is inserted in the city directory and the telephone directory. At this office it has a general freight and passenger agent, who has charge of a district comprising portions of the states of Pennsylvania, Maryland, West Virginia, and Virginia, and under him are various traveling freight and passenger agents, who report to him. A staff of employés, consisting of two clerks and two stenographers, are also maintained at this office, who are in the employ of, and paid by, the company by pay roll from Chicago. The company advertises the names and locations of its 'general agents,' among which it gives: 'Philadelphia, Pennsylvania, 836 Chestnut street, Harry E. Heller, District Freight and Passenger Agent.' The correspondence from the office at Philadelphia is carried on on letter paper bearing the following printed heading: 'Chicago, Burlington and Quincy Railway Company, Office of District Freight and Passenger Agent, 836 Chestnut Street, Philadelphia.'

"The character of the business carried on at the office is the securing of business over the railway lines, none of which are situated in Pennsylvania. In order to do this, the railway, through its agency at Philadelphia, advertises in the territory which is in charge of the agent, answers inquiries as to rates of passenger and freight transportation, endeavors by correspondence and personal calls to secure a share of the business, and enters into arrangements with prospective passengers and shippers for transportation as hereinafter stated.

"No tickets to ordinary passengers are kept on hand at the office of the company in Philadelphia, but, when a prospective passenger desires a ticket and applies at the office of the company in Philadelphia, the agent there will take the applicant's money, go to one of the railroad companies running out of Philadelphia, and get from that company a prepaid order, which it gives to the applicant, who can then, on his arrival at Chicago, present the order at

the Chicago, Burlington & Quincy Railway office there, and receive his ticket. The Chicago, Burlington & Quincy Railway also issues from its office at Philadelphia orders to railroad employés at reduced rates for transportation over other lines. In a few cases the money is received from such employés at the Philadelphia office, and orders for tickets issued to them. In more of the cases, no money is received, but an order is issued at the Philadelphia office which the railroad employé can present at the Western office and there receive and pay for his ticket. For the convenience of shippers, also, the Chicago, Burlington & Quincy Railway, at its office at Philadelphia, receives from freight shippers, who have shipped goods over lines running out from Philadelphia to points reached by the Chicago, Burlington & Quincy Railway Company, a surrender of their bills of lading over the initial line, and in return issues a receipt therefor, entitled a 'Bill of Lading,' and which provides that, if the goods are duly delivered to the Chicago, Burlington & Quincy Railway Company, they shall be transported over the line of such company at a certain rate of freight, subject to the conditions and regulations of the published tariff and rules, etc., and which further provides as follows:

" 'It is expressly understood and agreed that this bill of lading is issued at the request of, and for the convenience of, the shipper, and that said freight has not yet been received by the railway company, and that no obligation in respect to said freight is assumed by this railway company, nor will this bill of lading be in force, until said freight is received by this railway company. ———, Freight Agent.' "

Upon the ruling in Green's Case, therefore, it must be held, in my opinion, that the present defendant was not doing business within this district at the time when the summons was served. See, also, the cases cited by Mr. Justice Moody on page 534 of 205 U. S., and on page 596 of 27 Sup. Ct. (51 L. Ed. 916).

The plaintiff contends, however, that the present suit differs materially from Green v. Railway Co., because that proceeding was brought originally in the Circuit Court, and the service of the writ was therefore to be judged by the federal law; whereas, the action now before the court was brought originally in the common pleas of Philadelphia county, and the service must therefore be judged by the statutes of Pennsylvania, which (so it is argued) support the service and require the Circuit Court to declare it to be good. I am unable to agree with this proposition. Whatever the decision of a state court might be, if it were considering the validity of a sheriff's return, a Circuit Court is not under all circumstances bound to follow such decision. It is true that, after a suit has been removed to this court, the principal change in the proceeding is a change of forum; but it is not to be forgotten that the one forum is a court of general jurisdiction, while the jurisdiction of the federal court is limited only. While, therefore, a state court may perhaps indulge in presumptions and intendments to help out a sheriff's return, a federal court has no such power. Every fact that is essential to bring a cause within its limited jurisdiction must appear affirmatively upon the record, and omission is ordinarily as fatal as misstatement. If, therefore, a record that has been removed from the state court to a Circuit Court would be fatally defective if the suit had been originally brought in the federal tribunal, it is none the less defective although it was originally brought in a court of the state; and its defects may be successfully attacked in the Circuit Court, unless the proper amendments can there be made. As was said by the Supreme Court of the United States in Goldey v. Morning News, 156 U. S., on page 522, 15 Sup. Ct., on page 561, 39 L. Ed. 517:

"For the same reason, service of mesne process from a court of a state, not made upon the defendant or his authorized agent within the state, although there made in some other manner recognized as valid by its legislative acts and judicial decisions, can be allowed no validity in the Circuit Court of the United States after the removal of the case into that court, pursuant to the acts of Congress, unless the defendant can be held, by virtue of a general appearance or otherwise, to have waived the defect in the service, and to have submitted himself to the jurisdiction of the court."

And in Courtney v. Pradt, 196 U. S., on page 92, 25 Sup. Ct., on page 210, 49 L. Ed. 398, the court also declares that:

"When a case has been removed into the Circuit Court on the ground of diversity of citizenship, that court is entitled to pass on all questions arising, including the question of jurisdiction over the subject-matter in the state courts, or the sufficiency of the service of mesne process to authorize the recovery of personal judgment. Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; Wabash Western R. Co. v. Brown, 164 U. S. 271, 17 Sup. Ct. 126, 41 L. Ed. 431; De Lima v. Bidwell, 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113."

See, also, Remington v. Railroad Co., 198 U. S. 95, 25 Sup. Ct. 577, 49 L. Ed. 959.

It is, I think, beyond dispute, that the present record could not support a personal judgment, because it offends against the rule which was thus distinctly laid down in St. Clair v. Cox, 106 U. S., at page 359, 1 Sup. Ct., on page 362, 27 L. Ed. 222:

"We are of opinion that when service is made within the state upon an agent of a foreign corporation, it is essential, in order to support the jurisdiction of the court to render a personal judgment, that it should appear somewhere in the record—either in the application for the writ, or accompanying its service, or in the pleadings, or the finding of the court—that the corporation was engaged in business in the state. The transaction of business by the corporation in the state, general or special, appearing, a certificate of service by the proper officer on a person who is its agent there would, in our opinion, be sufficient prima facie evidence that the agent represented the company in the business. It would then be open, when the record is offered as evidence in another state, to show that the agent stood in no representative character to the company, that his duties were limited to those of a subordinate employé, or to a particular transaction, or that his agency had ceased when the matter in suit arose."

Until the answer to the present rule was filed, the record of this case will be examined in vain to find an averment that the defendant was engaged in business in Pennsylvania at the time when the summons was issued and served. No such averment is to be found in the præcipe, in the writ of summons, in the return of the sheriff, in the statement of claim, or in the rule to plead—this constituting the whole record in the court of common pleas—and no evidence was laid before the Circuit Court upon this rule to justify a finding that defendant was at that time so engaged. It follows that the service is without adequate support, and must be set aside.

The general subject of the service of process upon foreign corporations is discussed in two elaborate notes in the Lawyers' Reports Annotated, one in volume 23, at page 490, and the other in volume 50, at page 589.

The service of the sheriff under consideration is accordingly set aside.