# ARCHER-DANIELS LINSEED COMPANY v. BLUE RIDGE DESPATCH and Others.[1]

February 3, 1911.

Nos. 16,881—(132).

**Unincorporated fast freight line — service of process on agent.**

Several foreign railway corporations, having no lines in this state, entered into an arrangement by which they adopted the name "Blue Ridge Despatch," and under that name established an agency in the city of Minneapolis, and appointed an agent, with authority to solicit business for shipment over its lines.   In pursuance of such authority, the agent received

[1]Reported in 129 N. W. 765.

[Note] Who may be served in suit against foreign corporation, see note in 23 L.R.A. 490.

money from shippers, in payment for transporting goods over its lines, issued bills of lading, and designated the point of delivery to the initial carrier in Minneapolis. In an action to recover damages, brought by a shipper whose goods were received by the Blue Ridge Despatch at Minneapolis for through shipment:

*Held*, service of process upon the agent at Minneapolis was service upon the constituent railroad corporations.

Action in the district court for Ramsey county to recover $1,376.-93 damages for failure to ship linseed oil cake from Philadelphia to Holland during the first half of April, 1908, as agreed. The Blue Ridge Despatch and the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, two of the defendants, appeared specially and separately moved to set aside the service of the summons upon them by service upon Charles R. Lewis, and to set aside the return of such service. The motions were denied, Kelly, J. From the order denying the motions, the Blue Ridge Despatch and the Cleveland, Cincinnati, Chicago & St. Louis Railway Company took separate appeals. Affirmed.

*How, Butler & Mitchell,* for appellants.
*Durment, Moore & Sanborn,* for respondent.

LEWIS, J.

This is an action to recover damages for negligence in the transportation of linseed oil cake shipped by plaintiff from Minneapolis to Holland. Summons was served upon C. R. Lewis as agent for the Blue Ridge Despatch, and also upon the same person as agent for Cleveland, Cincinnati, Chicago & St. Louis Railway Company, under section 4110, R. L. 1905. Both defendants appeared specially and made separate motions to set aside the service of the summons, upon the ground that all the railroad companies constituting the Blue Ridge Despatch and defendant railroad company were foreign corporations, not doing business in Minnesota, and therefore not subject to the jurisdiction of the courts of this state. Both motions were denied, and separate appeals were taken.

Defendant railroad company is a foreign company organized under the laws of Ohio, with its principal place of business in that

state.  Its lines extend through the states of Illinois, Indiana, Michigan, and Ohio, but not into Minnesota.  It has no property in this state, other than the office paraphernalia.

The Blue Ridge Despatch is a name used to designate what is called the fast freight route.  It is not a corporation, but is a consolidation of several foreign railroad soliciting agencies; i. e., the Chesapeake & Ohio Railway Company, Philadelphia & Reading Company, the Western Maryland Railway Company, the Norfolk & Western Railway Company, and defendant company, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company.  Its object is to secure prompt connection and quick service in the transportation of through freight over said lines under joint tariffs filed with the Interstate Commerce Commission by said companies.  For that purpose soliciting agents are appointed in different states and localities, whose duties are to solicit and route all freight.  C. R. Lewis, of Minneapolis, is one of such soliciting agents, and he has no other authority than the soliciting of freight and the routing of the same over said lines, or some combination of them.

For the purpose of routing freight over said lines the agent selects the local railroad over which the initial carriage is to be performed out of this state, receives the money for the through traffic, and issues a bill of lading.  The expenses of the local agent's office and his salary are prorated among the lines constituting the Blue Ridge Despatch.  The Blue Ridge Despatch has no income other than the prorated expense, and no property in the state of Minnesota except the office supplies and furniture for conducting the business as above described.  The local agent has no authority to quote special rates, and he applies to the general agent of the Philadelphia & Reading Railway Company at Chicago for quotations and all rates in reference to export shipments.  Freight is never delivered to the Blue Ridge Despatch as such, but is delivered to an initial local carrier in Minnesota.

In this case an export bill of lading was issued by Mr. Lewis, and the freight charges for the entire distance from Minneapolis to Holland were prepaid to him.  He selected the Chicago, St. Paul, Minneapolis & Omaha Railway as the initial carrier, and the bill

113 M.—24.

of lading reads, "received at Minneapolis, Minnesota, by C., St. P., M. & O. R. R.," and was executed by Mr. Lewis as follows: "C. R. Lewis, on behalf of the carriers severally, but not jointly." It is alleged in the complaint that six hundred tons of oil cake, of the value of $18,600, were shipped from Minneapolis in this manner, and that the charges were prepaid, amounting to $2,000, that the defendants had failed to comply with their contract, and that plaintiff was damaged in the sum of $1,376.93.

Appellant relies upon the authority of Green v. Chicago, B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. ed. 916, Earle v. Chesapeake & O. Ry. Co. (C. C.) 127 Fed. 235, and Goepfert v. Compagnie Generale Transatlantique (C. C.) 156 Fed. 196, and also maintains that the case is governed by North Wisconsin Cattle Co. v. Oregon Short Line R. Co., 105 Minn. 198, 117 N. W. 391.

In the North Wisconsin Cattle Co. case that action was brought in the district court of Hennepin county to recover damages for the depreciation in value of a train load of stock occurring in the state of Idaho, and the essential facts relied upon by the defendant in that case to constitute "doing business" within this state were as follows: Collins and Carter maintained an office in the city of Minneapolis. Their business was to influence shippers of freight and prospective passengers to use the lines of the Union Pacific Railway Company. They simply induced people doing business with local companies to route their goods or to take passage or to buy tickets over the Union Pacific line. They made no contract with shippers or passengers. They did frequently act as the agent of a purchaser, and secure from a local company a ticket routed over the Union Pacific. It was held that such business amounted to nothing more than soliciting business for the foreign company.

If in that case (it is argued) soliciting business and accepting money from a passenger was not "doing business," then in this case the acceptance of money from the shipper and the issuance of a bill of lading was not doing business. As we understand the argument, it is: If in the North Wisconsin Cattle Co. case the solicitor was the agent of the shipper or prospective passenger in taking his money and procuring a ticket, then in this case he was also the agent of

the shipper in taking his money and routing the goods, and the additional act of issuing a bill of lading did not constitute the transaction "business" within the meaning of the statute.

In Green v. Chicago, B. & Q. Ry. Co., the action was brought to recover damages for personal injuries alleged to have occurred in the state of Colorado, and the court held that an action did not lie against the company in the circuit court for the eastern district of Pennsylvania, because it was not transacting business within that jurisdiction. The party upon whom the service was made had an office in Philadelphia, and was designated as district freight and passenger agent. His business was to solicit and procure passengers or freight to be transported over the road, which had its commencement in Chicago. He sold no tickets and received no payments for transportation of freight. When a prospective purchaser desired a ticket and applied to the agent for one, he took his money and procured from one of the railroads running west from Philadelphia a ticket and a prepaid order, which gave the applicant, when he arrived at Chicago, the right to receive a ticket over that road. In some cases, for the convenience of shippers who had received bills of lading from the initial carrier, he gave in exchange therefor bills of lading over the defendant's line, and in these bills of lading it was recited that they should not be in force until the freight had actually been received by the Chicago, Burlington & Quincy road.

The court said that one element of the sufficiency of the service was whether the facts showed that the company was doing business within the district. "It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carriage of freight or passengers. * * * The business shown in this case was in substance nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it" —citing Earle v. Chesapeake & O. Ry. Co. (C. C.) 127 Fed. 235, and other cases.

In the Earle case the railroad company was organized under the laws of Virginia and did not operate any line in Pennsylvania. There was a somewhat similar arrangement for soliciting freight as is provided in the present case. The court held that the corporation maintained no offices in Pennsylvania, and that the occasional giving of information to one of the directors, who was the chairman of the finance committee, by the secretary, and the infrequent receipt or posting of a letter, did not bring the corporation itself within the jurisdiction. As we understand the statement of the case in the opinion, the soliciting agent did not have the authority and did not receive money and issue bills of lading. In this case, also, the cause of action did not arise within the jurisdiction of the Pennsylvania court, where the corporation was sued.

North Wisconsin Cattle Co. v. Oregon Short Line R. Co. is not controlling. The facts were different. It has become a settled principle that, where the business of an agent is merely to solicit business or to advertise the company, such acts of solicitation do not constitute "doing business." But it is quite a different thing to open an office and induce prospective shippers to transact business with the company through such office, which receives money from the shipper, issues bills of lading, designates the route, and causes the goods to be delivered to an initial carrier designated by him. This is the transaction of business within the state, at least so far as it may concern the shippers.

It is not necessary to decide that appellants are subject to service of process in all cases arising outside of this jurisdiction. We limit this decision to the particular facts, and hold that Mr. Lewis was the agent of appellants so far as the transaction involved was concerned. This construction of the statute is justified by the rules of comity which prevail between different states.

Appellant is entitled to bring actions in the courts of this state to enforce its rights growing out of transactions within its borders; hence, having opened an office herein, and induced the public to transact business with it, it is just that it should be subjected to the process of our courts. As stated in Guilford v. Western Union Tel. Co., 59 Minn. 332, 61 N. W. 324, 50 Am. St. 407, if, upon prin-

ciples of law and comity, foreign corporations are allowed to do business and maintain suits in another state, the general rule should be that they are liable to be sued in the same jurisdiction. If our courts admit and vindicate their rights, justice also admits and insists that we enforce their liabilities.

Affirmed.

JAGGARD, J., took no part.