WESTERN SMELTING & REFINING CO.
v. PENNSYLVANIA R. CO.
(two cases).

Civ. Nos. 95–47, 112–47.

United States District Court
D. Nebraska, Omaha Division.

Dec. 3, 1948.

Jack W. Marer, of Omaha, Neb., for plaintiff.

John L. Barton (of Brown, Crossman, West, Barton & Quinlan), all of Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

These two actions originated in the state district court of Douglas County, Nebraska, and were removed to this forum prior to the effective date of the new Judicial Code, which creates a different removal procedure than that heretofore existing, 28 U.S. C.A. § 1446. Except for the fact that the party upon whom summons was served differs in both actions, the two suits are otherwise identical. After No. 95-47 Civil was removed, counsel for plaintiff, apparently dubious as to the validity of the service therein, caused a new petition to be filed in the state court, and secured service thereunder upon a different party. This suit was in turn removed to this court, and appears in the above caption as No. 112-47 Civil. The defendant has filed motions, supported by affidavits, in both cases, attacking the sufficiency of service, and asking that the suits be dismissed. Its contention in substance is that the defendant has not consented to this suit; has not appointed an agent to receive service of process in Nebraska; is not doing business in Nebraska, and that the state court could not maintain the action without oppressively burdening interstate commerce. Furthermore, the defendant maintains that the Transportation Act, 49 U.S.C.A. § 20(11), precludes the state court in this matter. As an alternative, and in lieu of dismissal, the defendant asks the court to quash the service of summons. Due to the identity of the two actions, with the exception hereinbefore noted, the cause will be considered as one and the same except in that portion of this memorandum which deals specifically with the sufficiency of service.

The nature of the parties and the plaintiff's claim may be briefly stated. The plaintiff is a corporation organized under the laws of Nebraska with its principal place of business in Omaha; the defendant is a railroad company incorporated under the laws of Pennsylvania, with its principal place of business in Philadelphia. Plaintiff's claim sounds in tort for damages allegedly due as a result of the defendant's negligent handling and carriage of freight, and the conversion thereof.

The oral testimony taken at the time of the submission of the motions, and the pleadings, disclose the following facts: No line of the defendant enters into, extends from, or traverses the state of Nebraska. The western terminus of its main line is in Chicago, Illinois. The defendant maintains an office in Omaha, Nebraska, under the joint supervision of H. B. Peterson and H. W. Johnson, whose designated titles are District Passenger Agent and District Freight Agent respectively. This office serves the territory comprising part of Wyoming, part of South Dakota, and all of Nebraska. It is used to maintain records; to serve as a place for the performance of clerical tasks; and is the focal point for Peterson's and Johnson's activities, which constitutes the solicitation of passenger and freight travel over the defendant's line. Personnel is furnished Peterson and Johnson by the defendant to assist them in the performance of duties. It appears that the hiring and firing of such personnel is not within the province of either of these men. Discretion in this matter is lodged with the defendant's branch office in Chicago. The defendant owns the furniture and fixtures in this Omaha office; maintains a telephone and listing thereto in the Omaha directory; and H. W. Johnson's name appears therein in his designated capacity as district freight agent for the defendant. The Omaha office has been in existence for sixteen years. No bank account is maintained within the state of Nebraska by the defendant, and no cash transactions are handled by the Omaha office. However, on several occasions it has accepted pre-payments of freight charges from the plaintiff and has transmitted them onward. On one occasion, it accepted a cashier's check from the plaintiff to compensate for the underpayment of freight charges. As incidental to the solicitation of freight business, H. W.

Johnson issues exchange bills of lading. Neither he, nor the Omaha office in general, has authority to settle claims; yet when they pertain to shippers in his area, Mr. Johnson is kept informed as to the status of the claims. Johnson may refuse to issue an exchange bill of lading, but has never done so to date. He diverts shipments upon request of the shipper; traces shipments; furnishes information regarding rates over the Pennsylvania Railroad; and advises shippers the necessary documents needed to present a ·claim against the defendant.

In suit No. 95-47, Civil, Thomas E. Rohan, Jr., was served with summons. In suit No. 112-47 Civil, H. W. Johnson was served. As heretofore stated, Johnson was District Freight Agent for the territory comprising the state of Nebraska. In that capacity, he exercised joint control and management over the Omaha office. The personnel therein were under his co-supervision and direction. Rohan, however, was not vested with any managerial duties. His tasks were primarily clerical.

The scope of the defendant's activities in relation to the plaintiff's claim may be more briefly stated. The shipment out of which this controversy arises involves aluminum sheeting belonging to the plaintiff, situated at Detroit, Michigan. The plaintiff originally wished this aluminum shipped to Baltimore, Maryland. Pursuant to this plan, it contacted H. W. Johnson of the defendant's Omaha office, and asked for information relative to rates. Mr. Johnson was unable to furnish the desired information, but transmitted to the plaintiff the name of the defendant's freight agent in Detroit, Michigan, and suggested that plaintiff contact him regarding any matters pertaining to the shipment. Following Johnson's suggestions, the plaintiff contacted the Detroit agent, and obtaining the information he wished. Before this shipment could be commenced, however, the plaintiff concluded to transfer the aluminum not to Baltimore, Maryland, but to Long Island, New York. Accordingly, a bill of lading was prepared in the defendant's Omaha office, and the original and copies thereof were left with Johnson, and by him forwarded to Detroit. The aluminum moved on this bill of lading. Johnson notified plaintiff when the said aluminum arrived at its destination. After the consignee refused to accept the shipment, Johnson asked the plaintiff for a disposition of it. What occurred thereafter is not pertinent to the scope of the court's present inquiry. It suffices to say that the defendant sold the aluminum, and the plaintiff filed its claim.

██ A preliminary observation seems appropriate. Although the new Judicial Code establishes a different removal procedure, nothing appears therein to abrogate the following rules:

(a) The jurisdiction acquired by the federal court in a removal action is derived from the state court. If that court lacks jurisdiction over the parties or over the subject matter, the federal court is powerless to proceed. Lambert Run Coal Co. v. Baltimore & Ohio R. Co., 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671.

(b) And the challenge to the jurisdiction of the state court, as well as the sufficiency of the service of its mesne process may be asserted in the federal tribunal. Courtney v. Pradt, 196 U.S. 89, 92, 25 S.Ct. 208, 49 L.Ed. 398.

██ It appears undisputed that the state court had jurisdiction over the subject matter of the controversy. Herrmann v. Franklin Ice Cream Co., 114 Neb. 468, 208 N.W. 141, and hence the ensuing question arises as to whether the defendant was doing business in Nebraska so as to make it amenable to process therein. This question involves a federal issue to be determined apart from Nebraska authorities. Mechanical Appliance Co. v. Castleman, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272.

██ It appears that the defendant's activities in Nebraska were so related to the claim now pending as to validate a judgment in personam which the state court may have rendered. In reaching this conclusion, the court is not unmindful of the rule urged by the defendant that the mere solicitation of business, unaccompanied by more, is insufficient to support a finding of jurisdictional presence. See, however, Frene v. Louisville Cement Co., 77 U.S.

App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926. Nor has it looked lightly upon such cases as Green v. Chicago, Burlington & Quincy R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Maxfield v. Canadian Pacific R. Co., 8 Cir., 70 F.2d 982, or Sowl v. Union Pacific R. Co., D.C., 72 F.Supp. 542, wherein the courts, upon facts similar but not identical to those at bar, have reached a contrary conclusion from that indicated herein. If a measure of the defendant's activities as compared to those in the cited cases was the proper criteria by which to differentiate the decisions, then it is worthy to note that the scope of the activities now under consideration appear more extensive than those outlined in the cases upon which defendant relies, and the case at bar must certainly fall within the formerly acknowledged rule of solicitation plus. Such analysis, while at one time the suggested method of determination, has led to conclusions like that now expressed. St. Louis, Southwestern R. Co. v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486, Ann.Cas.1915B, 77; Reynolds v. Missouri Kansas & Topeka R. Co., 224 Mass. 379, 113 N.E. 413, affirmed per curiam 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788. But this method for determining when a corporation is within a state for jurisdictional purposes is no longer favored. The test is no longer whether there is a little more or less, but whether "traditional notions of fair play and substantial justice" are to be offended by finding the defendant subject to local jurisdiction. Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 35 L.Ed. 278, 132 A.L.R. 1357. Jurisdictional questions quite frequently are difficult of solution, and it cannot be said with exactness what degree of obedience a state may demand from one not in allegience. But as the court understands the case of International Shoe Company v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95, 161 A.L.R. 1057, a new fabric has been woven by which the defendant is clothed with jurisdictional responsibility. That is: "to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

Examining the facts of the case in this new perspective, it is at once apparent that the obligations upon which this claim is founded arose in some degree out of the defendant's activities in Nebraska. The bill of lading upon which the freight moved was prepared in the Omaha office, and transmitted to Detroit, Michigan. If the defendant had not maintained this Omaha office, the freight in question might have been delivered over other lines or by other means. It seems inconsequential to determine whether the relationship borne by the act done within the state to the liability arising is direct or proximate. There is no expression in the International Shoe Company case, supra, that such finding is requisite to our conclusion herein. It suffices if the activity caused the obligation to arise in some degree so that "traditional notions of fair play and substantial justice" are not offended. For the defendant, being endowed with the right to seek redress from the plaintiff in its home state upon causes transitory in nature, is not deprived of due process when the reciprocal right of the plaintiff is thus limited. Archer-Daniels Linseed Co. v. Blue Ridge Dispatch, 113 Minn. 367, 129 N.W. 765.

Disposing next of the question of sufficiency of service, the court takes note of Nebraska Revised Statutes 1943, Section 25-511, which provides for service upon foreign corporations by serving their managing agent. In Porter v. Chicago & Northwestern R. Co., 1 Neb. 14, it was held that an agent invested with the conduct and control at a particular place of the business of a corporation is a managing agent. This rule is certainly in harmony with the federal authorities on the subject. The Nebraska statute, construed in such a manner, affords a corporate defendant due process of law, for the managing agent has the interests of the corporation at

498

heart, and will sufficiently inform it of the pendency of suit. Hence, service upon H. W. Johnson must be held to be valid. He exercised co-supervision over the Omaha office. The other members of that office were subordinate to and under his control and direction. He was in truth and in fact a managing agent, one sufficiently vested with authority so as to properly inform the defendant of the action filed against it in the state court of Nebraska. On the other hand, service upon Rohan must be declared to be insufficient. His duties were primarily clerical. He had no discretion or voice in the control of the Omaha office. He was simply a clerk. Because of the court's ruling as to the sufficiency of service upon H. W. Johnson, and due to the identity between the two suits, suit No. 95–47 Civil will be dismissed for insufficiency of service rather than have the service of summons set aside, and thus provide the plaintiff with an opportunity to obtain valid service.

■ The defendant's contention that this is an action involving the Transportation Act, 49 U.S.C.A. § 20(11), and consequently not maintainable in Nebraska, because no line of the defendant is situated therein, appears untenable. There is no indication or evidence offered, and the court cannot summarily conclude, that an intermediary or terminal carrier is involved in the case at bar. The defendant's liability, if any, is not predicated upon this section of the Transportation Act, but rather rests upon the common law liability of carriers.

■ The final question to be decided is reached—that is—whether the maintenance of this action would constitute an unreasonable and oppressive burden upon interstate commerce. In suit No. 112–47 Civil, an affidavit of H. H. Young, Freight Claim Agent of the Pennsylvania Railroad Company, stated "that the trial of this case in Nebraska would require the presence of material witnesses employed by the Pennsylvania Railroad Company in the states of Michigan, New York and Pennsylvania, and perhaps other states, although none of such other states would be the state of Nebraska; that the presence of witnesses employed by the Pennsylvania Railroad Company at the trial of the case in Nebraska would cause them to be absent from their work in interstate commerce, and that this would subject the Pennsylvania Railroad Company to inconvenience and expense, and place an undue burden on interstate commerce." The Supreme Court, denying jurisdiction because of the great inconvenience and burden upon such commerce, has done so where the cause of action arose in another state, the defendant railroad did no business other than solicit traffic in the state where suit was brought, had no tracks in the state of the forum, and the plaintiff was not a resident of the state at the time the cause of action arose. Davis v. Farmers Cooperative Equity Co., 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996; Atchison, Topeka & Santa Fe R. Co. v. Wells, 265 U.S. 101, 44 S.Ct. 469, 68 L.Ed. 928; Michigan Central R. Co. v. Mix, 278 U.S. 492, 49 S.Ct. 207, 73 L.Ed. 470; Denver & Rio Grande R. Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295. In the case now being considered, the shipment originated in Michigan and was concluded in New York. There is no indication as to where the cause of action arose. However, the case at bar differs in one salient aspect from those cited in that the plaintiff here is a "resident" of Nebraska, and was at the time the cause of action arose. This difference is not to be considered lightly, and is a fact of "high significance." International Milling Co. v. Columbia Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396. See also Davis v. Farmers Co-Operative Co., supra, 262 U.S. at pages 316, 317, 43 S.Ct. 556, 67 L.Ed. 996. The affidavits tendered by the defendant fail to establish the number of witnesses it will need at the trial, the relative distance they will be required to travel, and the expense it will suffer if trial is permitted in Nebraska.

■ The court concludes, therefore, that the defendant has prima facie established a burden upon itself by the allowance of this suit in Nebraska, but not an oppressive or unreasonable one. Jurisdiction will not be denied on the grounds that the effective functioning of interstate commerce is impaired. However, the

court feels that the parties are entitled to be heard, and the court better advised, on the question of the transfer of the trial of this cause to a judicial district more convenient, as contemplated and provided by Section 1404 of the new Judicial Code. The court will hear counsel on that question at an early date convenient to the parties and the court.

An order is being entered overruling the motion of defendant to dismiss or quash service of summons in suit No. 112–47 Civil, and sustaining defendant's motion to dismiss suit No. 95–47 Civil, for insufficiency of service of process, and lack of jurisdiction over the defendant's person.