**LANDELL et al. v. NORTHERN PAC. RY. CO.**

Civ. A. No. 5514–50.

United States District Court
District of Columbia.

March 9, 1951.

Wm. H. Matthews, Jr. and Robert W. Lishman, Washington, D. C., for plaintiffs.

Dudley, Algire, Jones & Ostmann, Washington, D. C., for defendant.

CHARLES F. McLAUGHLIN, District Judge.

The plaintiffs are minority holders of shares of stock in the Northern Pacific Railroad Company, a Federal Corporation, organized and existing under the Act of July 2, 1864, 13 Stat. 365, the owners of which stock refused to join in the reorganization of said company in 1896 growing out of foreclosure proceedings before the United States Circuit Court for the Eastern District of Wisconsin.

The defendant became the holder, in said reorganization proceedings, of more than ninety per cent of the stock in the old

company. In this action the plaintiffs as such minority stockholders pray that the decrees of the Federal Court of Wisconsin in the above mentioned foreclosure proceedings be adjudged and decreed to be null and void and the title to the franchise, railroad and right of way granted to the Northern Pacific Railroad Company under the aforementioned Act of July 2, 1864 and the Joint Resolution of May 31, 1870, 16 Stat. 378, be decreed to be in the Northern Pacific Railroad Company and that the Northern Pacific Railway Company be adjudged and decreed to have no right, title or interest in or to the franchise, railroad and right of way so granted to Northern Pacific Railroad Company except as the holder of the majority of the capital stock and the bonds of said federal corporation. In addition plaintiffs pray for an accounting with defendant and further pray that all property, profits, benefits and advantages belonging to Northern Pacific Railroad Company or arising or accruing from its property and rights received, acquired or claimed by defendant, or any of its subsidiaries or agents pursuant to the aforementioned decrees or orders of the Federal Court of Wisconsin be ratably distributed among all the shareholders of Northern Pacific Railroad Company in proportion to the holdings of such shareholders in said Railroad Company.

Defendant moves to dismiss (1) for improper venue, (2) for lack of an indispensable party to the action, to wit Northern Pacific Railroad Company, and (3) for lack of service.

In support of its motion to dismiss for improper venue defendant contends that the action is local since the principal question involved in the case is the title to land and that actions of a local nature must be brought where the property involved, or some part thereof is located.

The principle announced in Massie v. Watts, 6 Cranch 148, 10 U.S. 148, 3 L.Ed. 181, appears to apply in the circumstances of the instant case since this action, like the Massie case, is not one "involving a naked question of title". In the case at bar the plaintiffs seek to hold defendant liable for an accounting as a majority stockholder occupying a fiduciary relationship to plaintiffs as minority stockholders. The Court is of the opinion that the observation of Chief Justice Marshall in the Massie case is applicable to the present situation, namely, "the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends does not seem sufficient to arrest that jurisdiction". Thus the action being grounded in breach of trust and transitory in character is maintainable wherever jurisdiction can be established over the defendant.

The portion of defendant's motion which seeks dismissal on the ground of plaintiff's failure to join an indispensable party, namely, Northern Pacific Railroad Company, is not sustainable in view of the character of the action brought by plaintiffs as shown by the allegations of the petition and the relief prayed therein. The suit is brought against Northern Pacific Railway Company as Trustee. It is not directed against the old company which defendant contends should be made a party. Its purpose is to hold the Northern Pacific Railway Company as trustee for the plaintiffs for the property which it has received. The rule announced by the Supreme Court of the United States in Southern Pacific Co. v. Bogert, 1919, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099, appears to be peculiarly applicable. In that case the circumstances were that the Southern Pacific had foreclosed a mortgage on the property of the Houston and Texas Central Railway Company in 1888 and said property was acquired by the Houston and Texas Central Railroad Company. Bonds of the old company were exchanged for those of the new and all the stock in the new company was issued to Southern Pacific. The minority stockholders of the old company received nothing and in 1913 said minority stockholders of the old company brought suit in the State Court in New York praying that Southern Pacific be declared trustee for them of stock in the new company and prayed further for an accounting. The suit was removed to

the Federal Court, Eastern District of New York. 226 F. 500. Plaintiffs prevailed in the trial court and on appeal in the Circuit Court of Appeals. 244 F. 61. The Supreme Court affirmed, remanding the case to the District Court for the purpose of accounting. In the opinion in the case in 250 U.S. 483, the Court stated, at page 487, 39 S.Ct. at page 535: "In considering the many objections urged against the decree, it is important to bear constantly in mind the exact nature of the equity invoked by the bill and recognized by the lower courts. The minority stockholders do not complain of a wrong done the corporation or of any wrong done by it to them. They complain of the wrong done them directly by the Southern Pacific and by it alone. The wrong consists in its failure to share with them, the minority, the proceeds of the common property of which it, through majority stockholdings, had rightfully taken control. In other words, the minority assert the right to a pro rata share of the common property; and equity enforces the right by declaring the trust on which the Southern Pacific holds it and ordering distribution or compensation. The rule of corporation law and of equity invoked is well settled and has been often applied. The majority has the right to control; but when it does so, it occupies a fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors. If through that control a sale of the corporate property is made and the property acquired by the majority, the minority may not be excluded from a fair participation in the fruits of the sale."

250 U.S. at page 492, 39 S.Ct. at page 537, the Court said further: "The Southern Pacific also urges that the suit must fail because the old Houston Company is an indispensable party and has not been joined. The contention proceeds upon a misconception of the nature of the suit. Since its purpose is merely to hold the Southern Pacific as trustee for the plaintiffs individually of the property which it has received, the old Houston Company is in no way interested and would not be even a proper party."

Defendant asserts that plaintiffs are not seeking the same remedy as was afforded by the Bogert case, supra; that in the Bogert case the plaintiffs affirmed and ratified the foreclosure sales, whereas in the instant case the minority stockholders have repudiated all elements of the reorganization of Northern Pacific Railroad; that in the Bogert case the reorganization plan was attacked as unfair and inequitable and recovery was sought of the minority holder's fair share in the proceeds of the sale, whereas here plaintiffs seek to set aside the court decrees as void. Accepting arguendo, such interpretation of the Bogert case, it would not appear that the variation would render inapplicable the use of the rule expressed therein. In that case it had been contended that the rule holding majority stockholders to a fiduciary relationship toward the minority holders should not be applied because Southern Pacific was not a direct stockholder but exerted its control through a subsidiary. Commenting on this contention the Court stated: "But the doctrine by which the holders of a majority of the stock of a corporation who dominate its affairs are held to act as trustee for the minority does not rest upon such technical distinctions. It is the fact of control of the common property held and exercised, not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation. * * * The essential of the liability to account sought to be enforced in this suit lies, not in fraud or mismanagement, but in the fact that, having become a fiduciary through taking control of the old Houston Company, the Southern Pacific has secured fruits which it has not shared with the minority. The wrong lay, not in acquiring the stock, but in refusing to make a pro rata distribution on equal terms among the old Houston Company shareholders."

█ It would appear that the relief sought by plaintiffs in the instant case is essentially similar to that sought in the Bogert case and that the rule announced in the Bogert case should, a fortiori, apply herein, since in this case plaintiffs, or their predecessors, have always persisted

in the claim that the reorganization was invalid and that the transfer of assets to the majority stockholders was illegal, whereas in the Bogert case the minority holders had for a time acquiesced in the reorganization plan.

As the basis for its motion to quash service, defendant argues that the corporation does not come within the rule of "doing business" so as to make it amenable to service here in the District of Columbia. Theirs, it is argued, is merely a matter of solicitation. Plaintiffs argue that defendant comes within the rule of "solicitation plus" and thus may be served in personam.

■ This question of the amenability to service in personam of a foreign corporation in a forum distant from its state of incorporation, does not lend itself to a general rule. Rather the facts of each individual case must be their own criteria. However, two general principles appear to have evolved. One is that solicitation in and of itself does not render a foreign corporation subject to suit, Green v. Chicago, B & Q R Co., 1918, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916. The other is that solicitation "plus" some other activity does subject the foreign corporation to liability to suit. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. And the doctrine is generally accepted that "very little more than 'mere solicitation' is required * * *". Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 133, 134 F.2d 511, 515, 146 A.L.R. 926. Thus a determination on this question can only be reached by analyzing any and all activities which the foreign corporation may carry on in this forum.

The defendant corporation, organized and existing under the laws of Wisconsin with its main office in St. Paul, Minnesota, has been present here in the District of Columbia since 1940. It conducts an office in the Shoreham Building and employs four persons known as "district passenger agent, district freight agent, general agent and a combination 'stenographer and chief clerk'." The office is organized into two departments, viz the freight and the passenger departments. The business which

the defendant carries on is undoubtedly solicitation. However, defendant goes further than this. It also sells tickets for travel on defendant's line only, and in the calendar year of 1950 it sold 24 such tickets. It also sells "railroad pre-paid orders" and in the calendar year 1950 it sold 8 of these. There is nothing in the record to indicate that such total sales were as the result of any limitation. There is no reason suggested as to why the defendant would not have been able to sell more than such totals were it to have sufficient customers to whom such sales may have been made. The money from the sales of such tickets and orders is deposited in a local bank.

In addition to the "solicitation plus rule" more recent cases have demonstrated a tendency to place the solution of the question more upon a recognition of whether or not the foreign corporation, enjoying the benefits of a local jurisdiction, may deny its subjection to such jurisdiction when it itself is the object of suit. In International Shoe case, supra, it was said: " * * * to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as these obligations arise out of or are connected with the activities within the state, a procedure which required the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue". [326 U.S. 310, 66 S.Ct. 160.]

In this connection see Western Smelting & Refining Co. v. Pennsylvania R. Co., D.C. Neb.1948, 81 F.Supp. 494 and State of Md. for use of Chrysler v. Eastern Air Lines, D.C.D.C.1948, 81 F.Supp. 345.

■ It would appear, therefore, that the defendant company is enjoying the fruits of the local jurisdiction. And as such either under the "solicitation plus" theory or the more liberal doctrine as announced in the International Shoe case, supra, it is amenable to process in the District of Columbia.

Defendant further contends that the motion to dismiss should be granted on

the principle of forum non conveniens. The difficulties attendant upon presentation of the defense as relied upon by counsel in its affidavits and arguments do not in the Court's opinion justify granting of the motion on the ground assigned. See Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055.

It is the opinion of this Court, therefore, that the motion to dismiss based upon the three foregoing grounds should be overruled. Counsel for Plaintiffs will prepare appropriate Order.